Peterson v. Warden, NHSP          CV-02-548-JD  08/29/03

UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


<u>Warren E. Peterson</u>

        v.                              Civil No. 02-548-JD
                                        Opinion No. 2003 DNH 149
<u>Warden, New Hampshire</u>
<u>State Prison</u>


                            O R D E R


     Warren E. Peterson seeks relief, pursuant to 28 U.S.C. §
2254, from his state conviction and sentence following his guilty
plea to charges of kidnaping, burglary, witness tampering, and
criminal threatening.  He contends that the state court denied
his motion to withdraw his plea, based on an asserted lack of
mental competence, in violation of his federal due process
rights.  The warden has moved for summary judgment.  Peterson
objects.


                        <u>Standard of Review</u>

     Summary judgment is appropriate in habeas proceedings, as in
other civil actions, when "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law."  Fed. R. Civ. P. 56(c); <u>see also</u> Fed. R.

Civ. P. 81(a)(2); Rule 11 of the Rules Governing § 2254 Cases. Additional standards, however, apply to the court's review of summary judgment motions in habeas cases. See, e.g., Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002).

If the state court adjudicated the petitioner's claim on the merits, a federal habeas court must decide whether the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision based on an unreasonable determination of the facts . . . ." § 2254(d); see also Price v. Vincent, 123 S. Ct. 1848, 1852 (2003). Adjudication on the merits does not mean that the state court necessarily decided the claim under federal law. Early v. Packer, 123 S. Ct. 362, 365 (2002). If the state court decided the federal claim under state law, the federal habeas court must determine whether that decision is contrary to clearly established Supreme Court precedent. Id. On the other hand, if the state court did not address the merits of a properly preserved federal claim at all, the federal court reviews the decision under a de novo standard. Gruning v. Dipaolo, 311 F.3d 69, 71 (1st Cir. 2002). "Furthermore, . . . state-court determinations of factual issues 'shall be presumed to be correct," unless the petitioner rebuts the presumption 'by clear and convincing evidence.'" Niland v. Hall, 280 F.3d 6, 11 (1st

2

Cir. 2002) (quoting § 2254(e)(1)).

<u>Background</u>

Peterson suffered from emotional problems including episodes of depression for most of his life. During the course of his divorce proceedings in 1998, he was denied custody of his son and was ordered to pay child support and alimony. He also lost his job at about the same time, accepting a buyout from his employer. He checked himself into a psychiatric hospital for three days in November of 1998.

In January of 1999 he was found in contempt during the divorce proceeding and spent a night in jail. In February, he was arrested for stalking his wife and spent a weekend in jail. After living with his father for a month, he again checked himself into a psychiatric hospital and was released in March of 1999. Three days after he was released, he kidnaped his wife, handcuffed her, threatened her repeatedly with a gun, and held her hostage for hours.

Peterson was arrested and charged with attempted murder, kidnaping, burglary, witness tampering, and criminal threatening. He was admitted to the Secure Psychiatric Unit of the New Hampshire State Prison on March 23, 1999. Beginning in April of 1999, Peterson was represented by Lucy Martin of the New Hampshire Public Defender's Office. Julian Nichols, Martin's

associate, later joined in the representation.  In July of 1999, Martin began discussing with Peterson the possibilities of accepting a plea bargain.  The state offered a plea bargain at the end of August.  Martin met with Peterson and talked with him on the telephone about the offer that the state would drop the attempted murder charge and that Peterson would enter a naked plea of guilty to the remaining charges.

On August 31, Martin notified the court that Peterson would plead guilty.  Martin met with Peterson on September 1 and September 3.  Peterson entered his guilty pleas in court on September 10, 1999.  He was sentenced on November 10, 1999. Peterson filed a motion to withdraw his pleas and to vacate his sentence on March 21, 2001.  A hearing was held on the motion on June 21, 2001.  At the hearing, Peterson, Dr. Eric Mart, and Lucy Martin testified.  The court denied the motion to withdraw on June 25, 2001.  The New Hampshire Supreme Court declined to hear the appeal on October 9, 2001.

Peterson, who is represented by counsel, filed a petition seeking habeas corpus relief on the ground that his plea was not voluntary due to his mental incompetence caused by depression and the effects of a severe physical beating he received the night before the plea hearing.  He supplemented his petition to add a claim that the state court "erred by making conclusions of fact

4

regarding defendant's mental illness by finding that it cannot be, as a matter of law, equated with incompetence."[1] Amendment, (doc. #3).

## Discussion

The warden moves for summary judgment, asserting that the state court's decision denying Peterson's motion to withdraw his guilty plea was neither contrary to nor an unreasonable application of Supreme Court precedent. Peterson contends that summary judgment is inappropriate due to material factual disputes that must be resolved at an evidentiary hearing. The court previously ruled, however, that Peterson has not shown that he is entitled to an evidentiary hearing. See Order of July 2, 2003.

Because the state court adjudicated Peterson's claim based on state law, this court reviews the decision under § 2254(d) to determine whether it is contrary to clearly established federal law as determined by Supreme Court precedent. Early, 123 S. Ct.

---

[1]In his objection to the warden's motion for summary judgment, Peterson erroneously states that he amended his petition to add a claim that the state court applied an unconstitutional burden of proof. That is not the claim that was added by amendment. The court notes that Peterson's counsel continues to use a variety of incorrect case numbers for the filings in this case, which may have caused counsel's confusion as to which claims are at issue here.

5

at 365; <u>McCambridge v. Hall</u>, 303 F.3d 24, 35 (1st Cir. 2002).

Contrary to federal law, in this context, means that the state

court applied a legal standard that contradicts the governing

Supreme Court precedent or arrived at a different result despite

facts that are indistinguishable from a Supreme Court case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). Alternatively,

habeas relief is available if a state court decision "was based

on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." § 2254(d)(2).

To avail himself of that relief, a petitioner must first show by

clear and convincing evidence that the state court's factual

findings were incorrect. § 2254(e)(1); <u>Wiggins v. Smith</u>, 123 S.

Ct. 2527, 2539 (2003); <u>Sanna v. Dipaolo</u>, 265 F.3d 1, 7 (1st Cir.

2001).


A. <u>Legal Standard</u>

In this case, the state court evaluated Peterson's motion to

withdraw his guilty plea under the state law standard articulated

in <u>State v. Laforest</u>, 140 N.H. 286 (1995).[2] "When a defendant

---

[2]<u>Laforest</u> is cited only in the state court's first decision denying Peterson's motion to withdraw his guilty plea. The final decision, issued after an evidentiary hearing on the motion, states that the state and the defendant "concede that given the time of the filing of his Motion so long after his sentencing, the standard which must be employed by the Court in reviewing the

6

moves to withdraw a prior guilty plea, he has the burden 'to prove that his earlier plea was not made voluntarily and that withdrawal of the plea must be allowed to correct a manifest injustice.'" Id. at 289 (quoting State v. LaRoche, 117 N.H. 127, 131 (1977)). After an evidentiary hearing, the state court concluded that, contrary to Peterson's assertions of incompetence, his understanding of the nature of the charges against him and of the plea process was not impaired and that his decision to plead guilty was made knowingly, voluntarily, and intelligently without manifest injustice.

Peterson submitted a memorandum in support of his habeas petition in which he adopted the state law Laforest standard and argued that because of his psychological, emotional, and physical condition on the day of his guilty plea, his plea was not voluntarily and knowingly entered and constituted manifest injustice. In his objection to summary judgment, Peterson does not provide any argument that the state court decision is contrary to federal law.[3] Peterson relies on the competency

defendant's Motion to Withdraw Plea is that of 'manifest injustice.'" State v. Peterson, 99-S-599-603 (Rockingham County Super. Ct., June 25, 2001), at *3. Because the "manifest injustice" standard is part of the Laforest standard, it appears that the state court continued to rely on Laforest.

[3]Although Peterson raised legal issues in his memorandum in support of his motion for an evidentiary hearing, that motion was

7

standard provided by <u>Godinez v. Moran</u>, 509 U.S. 389, 398 (1993), which requires that a defendant pleading guilty be capable of a rational understanding of the proceedings, and contends that he did not meet that standard.   As such, Peterson presents a fact-based challenge to the state court decision, not an argument that the state court's decision is contrary to federal law.

B.   <u>Factual Issues</u>

As is noted above, in a habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct."  § 2254(e)(1).  The party seeking habeas relief bears the burden of rebutting the presumption by clear and convincing evidence.[4]  <u>Id.</u>  Factual issues, for purposes of § 2254(e)(1),

_____

denied, and Peterson has not pursued those arguments in opposition to summary judgment.  Even if those arguments were deemed to be properly raised, however, they would be unavailing, as Peterson did not point to clearly established federal law, based on Supreme Court precedent, that is contrary to the state court's legal standard.

[4]Peterson sought an evidentiary hearing to present the testimony of a new expert witness, a psychiatrist, as to his asserted lack of competence to plead guilty.  The state court, however, held an evidentiary hearing and allowed Peterson to present the testimony of an expert of his choice with respect to the issue of his competence.  Peterson did not show, in support of his request for an evidentiary hearing, that he had exercised reasonable diligence in developing the factual record  but was prevented from presenting the testimony of the psychiatrist at the state court hearing.  <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 420,

8

are "basic, primary, or historical facts:  facts in the sense of a recital of external events and the credibility of their narrators."  Coombs v. Maine, 202 F.3d 14, 18 (1st Cir. 2002) (internal quotation omitted).

In response to the warden's motion for summary judgment, Peterson argues that material factual disputes exist, without presenting any argument as to what those disputes might be.  The only factual issues Peterson has raised are presented in support of his motion for an evidentiary hearing, which was denied. There, Peterson contends that the state court found that major depression never results in incompetence, that incompetence cannot be determined retrospectively, that a Ph.D. cannot diagnose mental illness, and that a person who would not fare well at trial suffers no harm from an incompetent plea.  Even if these arguments had been presented in opposition to the warden's motion for summary judgment, they would be unavailing because the record does not show that the state court made such findings.

In contrast, the record amply supports the state court's factual determinations as to Peterson's competence to plead guilty.  At the hearing on Peterson's guilty plea held on

---

430 (2000).  Therefore, the rigorous requirements of § 2254(e)(2) applied to his request for a hearing.  Because Peterson did not satisfy those requirements, his request for a hearing was previously denied.

9

September 10, 1999, the judge asked Peterson questions about his educational and work background, about the acknowledgment and waiver of rights form, about his right to trial and related rights, about his understanding of the agreement with the prosecutor, and about the rights he was waiving by pleading guilty.  Peterson answered all of the questions coherently and appropriately, agreed he intended to waive his rights to trial and appeal, and admitted that he had committed the acts with which he was charged.  The judge reviewed the maximum sentences for the offenses.  The judge also reviewed Peterson's medications, and when he asked Peterson if the medication affected his judgment, he said it did not.  Peterson's counsel confirmed that answer.  The judge also questioned counsel about their understanding as to whether it was in Peterson's best interests to plead guilty and his competence to plead, and they confirmed that he was competent.  Peterson accepted the factual bases of the charges against him.  Peterson then entered his guilty plea.

He was sentenced on November 10, 1999.  No transcript of the sentencing proceeding was provided to the court.  The warden represents, without contradiction, that Peterson described his criminal actions in detail at the hearing.  He did not move to withdraw his guilty plea until March 21, 2001.

10

At the hearing on Peterson's motion to withdraw his guilty plea, held on June 21, 2001, the state court heard testimony from Peterson, Eric G. Mart, Ph.D., and Lucy Martin, Peterson's counsel who represented him during the criminal proceedings. Dr. Mart, who is a psychologist, examined Peterson on August 10, 2000, October 20, 2000, and January 19, 2001. He gave his opinion as to the effect of Peterson's depression, and other events, on his understanding of the guilty plea proceeding. On cross examination, Dr. Mart indicated the limited records he had for review and the difficulty of making a retrospective diagnosis. Peterson testified about his lack of memory of certain pertinent events but also testified about the severity of the assault against him the night before his plea hearing. His credibility was undermined on cross-examination. Lucy Martin testified about her interaction with Peterson and his apparent understanding of the plea and the process. Having carefully reviewed the transcript of the hearing, this court finds nothing that would undermine the state court's factual determinations as to Peterson's competence to knowingly, intelligently, and voluntarily plead guilty.

Peterson has not shown any evidentiary support for his claims that due to his mental condition he was not competent to plead guilty or that the state court erroneously found that his

11

mental illness could not constitute incompetence.  He has not carried his burden, in opposition to the warden's motion for summary judgment, that factual issues remain as to whether the state court decision to deny his motion to withdraw his guilty plea was either contrary to clearly established federal law or based on an unreasonable determination of the facts.  Therefore, the warden is entitled to summary judgment.


### Conclusion

For the foregoing reasons, the warden's motion for late compliance (document no. 15) and for summary judgment (document no. 10) are granted.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

August 29, 2003

cc:  Paul J. Haley, Esquire
     Nicholas P. Cort, Esquire

12